UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. AVILEZ, | ) Case No. CV 12-3771-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND |
| | ) ORDER |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

## I.
## **INTRODUCTION**

On May 4, 2012, plaintiff James R. Avilez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision: whether the Administrative Law

Judge ("ALJ") properly discounted plaintiff's subjective complaints. Joint Stipulation ("JS") at 4-21.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted plaintiff's credibility. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-two years old on the date of his March 19, 2010 administrative hearing, has an eleventh grade education. AR at 28, 44, 129. Plaintiff has past relevant work experience as a construction worker. *Id.* at 28, 132.

On October 8, 2008, plaintiff filed an application for SSI, alleging that he has been disabled since November 1, 2007, due to pain in the right knee, right arm, and fractured elbow. *Id.* at 120, 125. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 20, 71-81, 84-86.

On March 19, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 35-66. On October 18, 2010, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 8, 2008, the application date. *Id*. at 23.

At step two, the ALJ found that plaintiff suffered from the following severe combination of impairments: obesity; degenerative lateral meniscus of the right knee with chondromalacia; status post femoral condyle arthroplasty; gout with

symptoms of swollen right elbow and left knee; and degenerative disc disease of the lumbar spine with spinal stenosis and disc bulge. *Id.* The ALJ ruled out depression. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 23-24.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that he had the RFC to perform light work, with the limitations that plaintiff can: lift up to twenty-five pounds occasionally and ten pounds frequently; stand and walk, with normal breaks, for up to six hours, cumulatively, and sit, with normal breaks, for up to six hours, cumulatively, in an eight-hour workday; occasionally bend, stoop, kneel, crawl, and climb, but never use ladders, ropes, or scaffolds. *Id.* at 24-28.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a construction worker. *Id.* at 28.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including gluer/labeler, assembler, inspector and hand packager, inspection clerk, product folder, and hand bander. *Id.* at 29-30, 210. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id*. at 30.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1     Plaintiff filed a timely request for review of the ALJ's decision, which was
2 denied by the Appeals Council. *Id.* at 1-6. The ALJ's decision stands as the final
3 decision of the Commissioner.

### III.
### STANDARD OF REVIEW

6     This court is empowered to review decisions by the Commissioner to deny
7 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
8 Administration must be upheld if they are free of legal error and supported by
9 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
10 (as amended). But if the court determines that the ALJ's findings are based on
11 legal error or are not supported by substantial evidence in the record, the court
12 may reject the findings and set aside the decision to deny benefits. *Aukland v.*
13 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
14 1144, 1147 (9th Cir. 2001).

15     "Substantial evidence is more than a mere scintilla, but less than a
16 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such
17 "relevant evidence which a reasonable person might accept as adequate to support
18 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
19 F.3d at 459. To determine whether substantial evidence supports the ALJ's
20 finding, the reviewing court must review the administrative record as a whole,
21 "weighing both the evidence that supports and the evidence that detracts from the
22 ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be
23 affirmed simply by isolating a specific quantum of supporting evidence.'"
24 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
25 Cir. 1998)). If the evidence can reasonably support either affirming or reversing
26 the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.

### DISCUSSION

Plaintiff complains that the ALJ failed to provide clear and convincing reasons to reject his testimony regarding his physical limitations. JS at 4-14. The court disagrees.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

Here, at the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided three reasons for discounting plaintiff's credibility: (1) plaintiff lacked objective medical evidence to substantiate his claims and the available objective medical evidence contradicted his claims; (2) the treatment plaintiff received was inconsistent with the alleged degree of impairment; and (3) plaintiff's daily activities were inconsistent with the alleged degree of pain. *Id.* at 27.

**A.    The ALJ Gave Clear and Convincing Reasons for Lack of Objective Medical Evidence to Support Plaintiff's Claims**

The first ground provided by the ALJ for finding plaintiff less credible was the lack of objective medical evidence to substantiate plaintiff's claims and the inconsistencies between the available objective evidence and the claims. *Id.* at 27. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but it may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, plaintiff claimed at the hearing before the ALJ that he stopped working in 2007 because of right knee pain and became bedridden for three weeks. AR at 53-55. At that time, plaintiff was suffering from elbow fracture, which he had sustained in early 2007. *Id.* at 46, 55. Plaintiff also testified that he suffered from persistent back problems. *Id.* at 59-61. Regarding his functional

6

capacity, plaintiff claimed he could sit for 20-30 minutes without changing positions, stand 10-15 minutes at one time, and walk about two to three blocks. *Id.* at 61-62.  Plaintiff testified that his most comfortable position was lying down. *Id.* at 62-63.

In a "Function Report" filed with the SSA on February 11, 2009, plaintiff claimed that he wakes up much of the night due to back, hip, and leg pain and lies down all day to "sleep away the pain."  *Id.* at 153.  Plaintiff indicated further that due to pain he experienced great difficulties with: (1) putting on pants, shoes, and socks, and getting into the tub to bathe; (2) shaving at the sink; (3) using the toilet; (4) making meals; (5) housework; (6) driving more than 30 minutes.  *Id.* at 154-56.

Medical examinations between 2007 and 2010 revealed that plaintiff suffered from a meniscus tear in his right knee, mild to moderate degenerative changes in his left knee, mild to severe degenerative disc disease in his lumbar region, and an increase in the severity of his gout in his right elbow and left knee. *Id.* at 25, 28, 46, 51, 55-57, 60, 125, 139, 142-43, 164-67, 223-31, 258-59, 275, 282-83, 288, 303, 319-320.

Despite the medical findings and plaintiff's complaints that indicated that plaintiff was at one point more significantly limited in his functional capacity, the ALJ found plaintiff's claims of limitations amounting to a disability were not supported by objective medical evidence.  *Id.* at 27.  *See Rollins*, 261 F.3d at 857 (lack of corroborative objective medicine may be one factor in evaluating credibility).  In discounting plaintiff's credibility, the ALJ took into strong consideration the opinions of Kambiz Hannani, M.D., a consultative examining physician, and William Newman, M.D., a medical expert.

First, the ALJ noted that Dr. Hannani, after conducting a complete orthopedic examination in 2008, found plaintiff had normal gait, normal ranges of motion in the cervical region, upper extremities, and lower extremities, and normal

neurological examination. *Id.* at 25, 241-43. The ALJ did note that Dr. Hannani had observed a reduced range of motion in plaintiff's back and severely positive leg-raising tests. *Id.* The ALJ then included Dr. Hannani's conclusion that plaintiff had right lower extremity radiculopathy, but could still lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, and sit without limitations. *Id.* at 25, 243.

Second, the ALJ referenced the RFC assessment report filed by state agency physicians. The ALJ noted that a Dr. Jaituni, a medical consultant working for a state agency, found plaintiff to be "limited to a reduced range of light work" in January 2009. *Id.* at 26, 244-48. The ALJ also noted that I.J. Newton, another state agency physician, "affirmed the initial assessment for a reduce range of light work." *Id.* at 26, 253-55.

Third, the ALJ considered Dr. Newman's opinions. After reviewing the medical records and submitted statements in response to interrogatories sent to experts by the ALJ, Dr. Newman found in April 2010 that plaintiff's complaints "in general [were] reasonable," but Dr. Newman found some of the conditions causing plaintiff's symptoms – gout and obesity – to be amenable to treatment. *Id.* at 23-24, 183-84. The ALJ then noted Dr. Newman's functional capacity determination that plaintiff could: stand and walk four hours in an eight-hour workday; sit for six hours in an eight-hour workday; lift and carry twenty-five pounds occasionally and ten pounds frequently; and occasionally stoop, kneel, crouch, and crawl. *Id.* at 23, 24, 185. The ALJ also noted Dr. Newman's May 2010 assessment, after reviewing a more recent MRI, that plaintiff was limited to "sedentary work" mainly due to spinal stenosis, which, if severe enough, would require corrective surgery. *Id.* at 26, 328.

After considering these RFC assessments and the results of x-rays, MRIs, and evidence of other examinations and diagnoses in the record, the ALJ

1 concluded that plaintiff was "limited to standing and walking for up to six hours in
2 an eight-hour workday," placing him in "the light exertional range." *Id.* at 25.
3 Though plaintiff was "at one time, more significantly limited in standing and
4 walking," the ALJ observed "this limitation did not persist for twelve months of
5 longer" and "his overall condition had improved by the time he was examined" by
6 Dr. Newman. *Id.* From the absence of surgery recommendation for spinal
7 stenosis, the ALJ determined in the end that Dr. Newman's RFC assessment of
8 "sedentary work" was not warranted and concluded that plaintiff was capable of
9 performing light work, that is, plaintiff could: "lift up to twenty-five pounds
10 occasionally and ten pounds frequently; stand and walk, with normal breaks, for
11 up to six hours, cumulatively; sit, with normal breaks, for up to six hours,
12 cumulatively, in an eight-hour workday; occasionally bend, stoop, kneel, crawl,
13 and climb, but never use ladders, ropes, or scaffolds." *Id.* at 24-28. *See*
14 *Tommasetti*, 533 F.3d at 1041-1042 (only the ALJ is the final arbiter with respect
15 to resolving ambiguities in the medical evidence).

The court finds the ALJ presented clear and convincing reasons to discount plaintiff's claims of pain and limitations and to determine that plaintiff's claims lack support from objective medical evidence. The ALJ properly acknowledged the medical evidence for plaintiff's "conditions of ill-being," but the ALJ provided clear and convincing reasons, based on objective medical evidence and opinions, that plaintiff's subject complaints of pain and impairment should be discounted. *See* AR at 23, 24-28.

**B.** **The ALJ Gave a Clear and Convincing Reason When He Explained That the Conservative Treatment Plaintiff Received Was Inconsistent With Plaintiff's Claims**

The ALJ's second ground for the adverse credibility finding – conservative treatment – was similarly clear and convincing. *Id.* at 41-42; *see Parra v. Astrue*,

9

481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility). With regard to plaintiff's treatment plan, the ALJ noted plaintiff was "the subject of propholactic [sic] limitations during periods of conservative treatment" until plaintiff's "overall condition . . . improved by the time he was examined by" Dr. Hannani. AR at 25. The ALJ also noted Dr. Newman's assessment of plaintiff's spinal stenosis – that if plaintiff's "symptoms were severe enough, corrective surgery (laminectomy) would have been considered by the neurosurgeon." *Id.* at 26, 328. "Apparently," the ALJ observed, "it was not" considered or recommended by a neurosurgeon. *Id.* at 26. Plaintiff's conservative treatment that the ALJ identified in the opinion is another clear and convincing reason for discounting plaintiff's claims. *See Parra*, 481 F.3d at 750-751(conservative treatment was sufficient to discredit testimony); *Tommasetti*, 533 F.3d at 1039 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility).

The record further supports the ALJ's conclusion that plaintiff received conservative treatment. After going through condroplasty and partial lateral meniscectomy to address his right knee pain, which led to marked improvement, plaintiff's treatment consisted primarily of medication and physical therapy, without any further surgical interventions. *Id.* at 25, 53, 56, 57, 240, 273, 274, 277, 278, 280, 285, 287, 292, 293-94, 296-99, 308. *See Tommasetti* 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment). Plaintiff testified at his hearing that he was only taking Ibuprofen, Darvocet, and Soma to manage pain – all of which are considered to be part of conservative treatment. AR at 53, 56, 61. *See O'Neal v. Barnhart*, 2006 WL 988253, at *14 (C.D. Cal. Apr. 13, 2006) (considering Ibuprofen and

Darvocet to be conservative pain management measures); *Esparza v. Astrue*, 2011 WL 5037049, at *6 (C.D. Cal. Oct. 24, 2011) (considering Soma to be conservative treatment).

Accordingly, the court finds that by citing to the conservative treatment plaintiff received, the ALJ gave an additional clear and convincing reason to discount plaintiff's claims.

## C. The ALJ Gave a Clear and Convincing Reason When He Showed That Plaintiff's Daily Activities Were Not Consistent With the Alleged Degree of Pain and Impairment

The third ground for an adverse credibility finding – that plaintiff's daily activities were inconsistent with the severity of his pain and impairment – was also clear and convincing. *Id.* at 27. *See Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (a plaintiff's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (an ALJ may discredit a plaintiff's testimony based on the plaintiff's self-limited activities and lack of motivation). A plaintiff does not need to be "utterly incapacitated," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), and "the mere fact a [plaintiff] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, however, despite plaintiff's claim to be severely limited in his daily activities, the ALJ found evidence that plaintiff could, when motivated, perform many daily activities. AR at 27. Plaintiff claimed it was difficult for him to drive due to severe pain, but he testified he did drive "when necessary," and that he did so about once a day. *Id.* at 58, 156. Plaintiff claimed he was capable of preparing

1  a small meal for himself, though other members of his household usually do it if
2  they are home. *Id.* at 27, 57-58. Plaintiff also indicated in a Function Report that
3  he could prepare meals for himself, if he had to. *Id.* at 155. Though plaintiff
4  claimed to spend most days in bed, he admitted he went out to restaurants and
5  went shopping with his wife. *Id.* at 27, 58-59. While the ALJ recognized that
6  "[t]he ability to engage in some normal daily activities does not prove that one is
7  able to perform competitive work on a regular and continuous basis," he opined
8  that plaintiff's activities suggest that (1) plaintiff "has better physical capacities
9  than he has stated in the testimony and written statements," and (2) plaintiff "has
10 not been completely frank," making the ALJ "cautious about fully accepting the
11 claims advanced." *Id.* at 27. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.
12 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or
13 between the testimony and the claimant's conduct."). The court finds this third
14 factor provided by the ALJ is a clear and convincing reason for discounting
15 plaintiff's claims.

16      The three factors considered by the ALJ in evaluating plaintiff's subjective
17 complaints of pain – lack of objective evidence, conservative treatment, and
18 activities of daily living – were valid, and the ALJ's explanations for his
19 credibility determination were clear and convincing because the ALJ set forth
20 "findings sufficiently specific to permit the court to conclude that the ALJ did not
21 arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947,
22 958 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-46 (9th Cir. 1991)).
23 Accordingly, this court finds the ALJ properly discounted plaintiff's subjective
24 complaints.
25 //
26 //
27 //
28 //

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: April 15, 2013

SHERI PYM
United States Magistrate Judge